UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                             Case No. 26-CR-

NAEL N. JABBAR,

        Defendant.

**PLEA AGREEMENT**

1.     The United States of America, by its attorneys, Brad D. Schimel, United States Attorney for the Eastern District of Wisconsin, and John P. Scully, Assistant United States Attorney, and the defendant, Nael N. Jabbar, individually and by attorney Jeffrey J. Guerard, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

**CHARGES**

2.     The defendant has been charged in a two-count information, which alleges violations of Title 18, United States Code, Section 1343, and Title 26, United States Code, Section 7206(1).

3.     The defendant has read and fully understands the charges contained in the information. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT ONE
*(Wire Fraud)*

**THE UNITED STATES ATTORNEY CHARGES THAT:**

7. Beginning in at least 2021 and continuing through 2024 in the State and Eastern District of Wisconsin and elsewhere,

**NAEL N. JABBAR**

with intent to defraud, knowingly devised, participated in, and carried out a scheme to defraud and obtain money by means of materially false and fraudulent pretenses and representations (the scheme), which scheme is described more fully below.

8. Jabbar defrauded the SNAP program, and obtained money from the SNAP program by means of materially false and fraudulent pretenses and representations.

9. While working at Hot Spot, Jabbar exchanged SNAP benefits for cash, at a discounted rate, in violation of the regulations governing the program.

10. Jabbar caused the SNAP program to reimburse Hot Spot for the full amount of SNAP benefits, recouping the difference between the benefit amount and the discounted cash payments Jabbar made to recipients.

11. To receive fraudulent reimbursements from the SNAP program, Jabbar initiated Quest card transactions using an electronic POS terminal, triggering the interstate transmission of certain writings, signs, signals, and sounds that accomplished the transfer of funds controlled by Jabbar.

12. As a result of the scheme, Jabbar received approximately $1,610,702.92 in SNAP benefits to which he was not entitled.

2

13.   For the purpose of executing the scheme, Jabbar used and caused the use of interstate wire communications, including through text message and wire transfer of funds.

14.   On or about February 28, 2024, in the State and Eastern District of Wisconsin and elsewhere,

**NAEL N. JABBAR,**

for the purpose of executing the scheme to defraud, knowingly caused $358.52 of SNAP benefits to be redeemed on Quest card ending in #9254 by means of wire communication transmitted in interstate commerce.

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO
(Filing a False Tax Return)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

15.   On or about March 24, 2022, in the State and Eastern District of Wisconsin,

**NAEL N. JABBAR**

willfully made and subscribed, and filed and caused to be filed with the U.S. Internal Revenue Service, a false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2021, which was verified by a written declaration that it was made under the penalties of perjury and which Jabbar did not believe to be true and correct as to every material matter.

16.   Specifically, Jabbar knowingly underreported $164,675 of his income from Hot Spot and failed to report his true income to his return preparer to accurately prepare and file his 2021 tax return. This underreported income caused a tax loss of $42,054.

All in violation of Title 26, United States Code, Section 7206(1).

6.   The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 5. The parties acknowledge and understand that if this case

3

were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

> *The U.S. Department of Agriculture (USDA) administers the Supplemental Nutrition Assistance Program (SNAP), using an Electronic Benefit Transfer (EBT) card system, which is like a debit card that recipients can use to redeem their benefits. By law, SNAP funds may only be exchanged or redeemed for approved food products and may not be exchanged for cash. Retail stores may participate in SNAP only with USDA authorization, and the USDA requires retail stores to certify their awareness that SNAP benefits may not be exchanged for cash or ineligible items.*
>
> *Completing a SNAP transaction in Wisconsin requires interstate wire communications. When a SNAP recipient makes a purchase, the USDA-approved vendor swipes the card and inputs the purchase amount through a point-of-sale (POS) terminal. The POS then dials into a computer system maintained by the State of Wisconsin's approved vendor, Fidelity Information Services, in New Berlin, Wisconsin, which approves or rejects the card transaction. At the end of each business day, the Fidelity computer system totals all approved SNAP transactions for each Wisconsin retailer. Fidelity then wires that information to Wells Fargo Bank, located within the State of Minnesota. Wells Fargo electronically disburses funds constituting each retailer's reimbursement directly to a bank account designated by the retailer.*
>
> *Jabbar was the owner and operator of Hot Spot Supermarket, a medium-sized convenience store in Milwaukee. Since 2005, Hot Spot was an authorized SNAP participant. Jabbar signed documents on behalf of Hot Spot indicating that he agreed to comply with all the requirements of the SNAP program. Hot Spot far exceeded other stores of similar size in the Milwaukee area in average SNAP redemptions.*
>
> *Jabbar used his position at Hot Spot to exchange SNAP benefits for cash. As one example, on February 28, 2024, a customer entered Hot Spot and exchanged SNAP benefits from his Quest card for $150 cash, two packs of cigarettes, an alcoholic beverage, and some grocery items. Jabbar was the cashier for that transaction, which was recorded. Through the use of interstate wire communications, Hot Spot redeemed the SNAP benefits and received a total reimbursement of $358.52 to its account at Tri City National Bank.*
>
> *Agents executed a search warrant at Hot Spot, where Quest cards belonging to SNAP recipients were located. Agents also seized Jabbar's phone, which contained text messages regarding exchanging SNAP benefits for cash at Hot Spot. After the execution of the search warrant, there was a substantial drop in EBT transactions occurring at Hot Spot.*
>
> *From 2021 through 2024, Hot Spot received SNAP redemptions into its bank account at Tri City National Bank, which Jabbar controlled. During that time, Hot Spot redeemed approximately $1,610,702.92 in SNAP benefits to which it was not entitled.*

*For tax years 2020 through 2022, Jabbar signed and submitted to the Internal Revenue Service (IRS) individual income tax returns that materially underreported the income he received from Hot Spot. During those tax years, Jabbar transferred approximately $611,411.53 from Hot Spot business bank accounts at Tri City Bank and Chase Bank to his personal accounts. Jabbar spent the funds from these transfers on:*

- *Cash Withdrawals - $127,976.95*
- *International Wires - $117,200.00*
- *Payments on Loans - $147,855.45*
- *Payments on Credit Cards - $89,174.75*
- *Amount spent or withdrawn overseas in Jordan - $53,386.83*
- *Items purchased from retail stores (Target, Gucci, Nordstrom) - $19,006.91*
- *Payments to Unlimited Vacation Club - $18,786.13*

*During those years, Jabbar and his wife reported on their tax returns a total of $139,134.00 in wages, which includes $124,134 from Hot Spot. Jabbar acted willfully, and knew he had a legal duty to file a truthful tax return. Jabbar filed individual income tax returns in prior years and his return preparer used amounts provided by Jabbar to prepare the tax returns at issue. By not making his return preparer aware of the transfers to his personal account, Jabbar knew he would be signing a false tax return. Jabbar signed and electronically filed his 2020, 2021, and 2022 individual income tax returns with the IRS that did not include these transfers, causing a total tax loss of $87,220.*

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## **PENALTIES**

7. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment and fines: Count One, twenty years and $250,000; and Count Two, three years and $250,000. Count One carries a maximum of three years of supervised release, and Count Two carries a maximum of one year of supervised release. Both Counts also carry a mandatory special assessment of $100. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraphs 30 and 31 of this agreement.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of Wire Fraud as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly devised or participated in a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises;
> Second, the defendant did so with the intent to defraud;
> Third, the scheme involved a materially false or fraudulent pretense, representation, or promise; and
> Fourth, for the purpose of carrying out the scheme or attempting to do so, the defendant knowingly caused interstate wire communications to take place in the manner charged in the particular count.

10. The parties understand and agree that in order to sustain the charge of Filing a False Tax Return as set forth in Count Two, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant prepared or caused someone to prepare an income tax return;
> Second, the income tax return was false as to a material matter, as charged in a particular count;
> Third, the defendant signed the income tax return, which contained a written declaration that it was made under penalties of perjury;
> Fourth, the defendant acted willfully, that is, he knew that he had a legal duty to file a truthful tax return, but when he signed the return, he did not believe that it was truthful as to a material matter; and
> Fifth, the defendant filed or caused someone to file the income tax return with the Internal Revenue Service.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before

the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The defendant acknowledges and agrees that his attorney has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the

sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 7 under Sentencing Guidelines Manual § 2B1.1(a)(1), and that the applicable base offense level for the offense charged in Count Two is 14 under Sentencing Guidelines Manual § 2T4.1(E).

18. If the sentencing court determines that the defendant does not have any criminal history points and otherwise meets all of the criteria listed in Sentencing Guidelines Manual § 4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines.

## Specific Offense Characteristics

19. The parties acknowledge and understand that the government will recommend to the sentencing court that a 16-level increase for loss exceeding $1.5 million under Sentencing Guidelines Manual § 2B1.1(b)(1)(I) is applicable to the offense level for the offense charged in Count One. The parties acknowledge and understand that the defendant will not join in this recommendation, and will recommend to the sentencing court that a 14-level increase for loss exceeding $550,000 under U.S.S.G. § 2B1.1(b)(1)(H) is applicable.

## Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

## Sentencing Recommendations

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

23. The government agrees to recommend a sentence at the low end of the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the

9

sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

### Fine

28. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

### Special Assessment

29. The defendant agrees to pay the special assessment in the amount of $200 prior to or at the time of sentencing.

### Restitution

30. The defendant agrees to pay restitution as ordered by the court to the U.S. Department of Agriculture. The parties acknowledge and understand that the government will seek restitution in the approximate amount of $1,610,702.92. The defendant will argue for restitution in a lesser amount, but not less than $550,000. The defendant understands that because restitution for the offense in Count One is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to

10

collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

31. The defendant agrees to pay restitution in the amount of $87,220.00 to the Internal Revenue Service. The defendant understands that the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

## Forfeiture

32. The defendant agrees that all properties listed in the information constitute the proceeds of the offense to which he is pleading guilty (Count One) or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

11

## DEFENDANT'S WAIVER OF RIGHTS

33. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

34. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant

under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

35. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

36. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

37. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective

assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

38. The defendant knowingly and voluntarily waives any claim or objection he may have based on statute of limitations, venue, etc.

## Further Civil or Administrative Action

39. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## MISCELLANEOUS MATTERS

40. In connection with the defendant's plea of guilty, the defendant, in consultation with counsel, has chosen not to request discovery materials pursuant to Fed. R. Crim. P. 16 ("Rule 16 Material"). The defendant understands that if not for entering this plea of guilty, the Government would be required to produce Rule 16 Material, and would further be required to produce material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Fed R. Crim. P. 5(f), and, if the defendant proceeded to trial, impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and Jencks Act material. The defendant acknowledges that the defendant has not and will not receive such information because the defendant has decided to plead guilty, waives the right to this information, and agrees not to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the

14

Case 2:26-cr-00023-BHL    Filed 02/06/26    Page 14 of 17    Document 2

Government has failed to produce any such information, apart from any information establishing the factual innocence of the defendant.

## GENERAL MATTERS

41. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

42. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

43. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

44. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

45. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

46. The defendant agrees to transmit his original records, or copies thereof, to the Examination Division of the Internal Revenue Service so that the Examination Division of the Internal Revenue Service can complete its civil audit of the defendant. The defendant agrees to

provide any additional books and records of his which may be helpful to the Examination Division of the Internal Revenue Service to complete its civil audit of defendant.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

47. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

48. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 2/6/26

_____
NAEL N. JABBAR
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 2/6/26

_____
JEFFREY J. GUERARD
Attorney for Defendant

For the United States of America:

Date: 2/6/2026

_____
BRAD D. SCHIMEL
United States Attorney

Date: 2/6/26

_____
JOHN P. SCULLY
Assistant United States Attorney

17